**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| BRENT BORDELON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>KELLY & ASSOCIATES INSURANCE GROUP, INC. dba KELLY BENEFITS, a Maryland corporation; DOES 1 through 10, inclusive,<br><br>*Defendant*. | Case No.: 1:25-cv01372<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brent Bordelon ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Kelly & Associates Insurance Group, Inc. dba Kelly Benefits ("Kelly Benefits" or "Defendant") and Does 1 through 10 ("Doe Defendants") (collectively, "Defendants") based upon personal knowledge as to himself and his own acts, and based upon, *inter alia*, the investigations of his attorneys.

**NATURE OF THE ACTION**

1. On or around April 21, 2025, Kelly Benefits informed its customers that it "recently learned" that an unauthorized third-party hacker obtained access to its internal data network and subsequently accessed and removed certain files containing the Personal Identifying Information ("PII") and Protected Health Information ("PHI") (together, "Private Information") between December 12, 2024 and December 17, 2024 (the "Data Breach").

2. The information that was impacted in this Data Breach included, *inter alia*, names, Social Security numbers, and insurance group ID numbers.

3. Kelly Benefits is a benefits administration company based in Maryland that provides services, including but not limited to, consulting, brokerage, and administration services

for employee benefits including online benefit administration, consolidated invoices, and compliance oversight programs for employers. As a result, Kelly Benefits collects, aggregates and stores the sensitive Private Information of hundreds of thousands individuals, if not more, across the country in the ordinary course of its business.

4. The governance of the Private Information that Kelly Benefits collects is subject to a framework of federal and state statutes in the United States. These regulations are designed to protect the privacy and security of sensitive information, particularly within healthcare and related industries.

5. Under statute and regulation, Kelly Benefits had a duty to implement reasonable, adequate industry-standard data security policies safeguards to protect patients' Private Information.

6. Plaintiff, individually and on behalf of those similarly situated persons ("Class Members"), brings this Class Action to secure redress against Kelly Benefits for its reckless and negligent violation of their privacy rights. Plaintiff and Class Members are individuals who had their Private Information collected, stored, and ultimately breached by Kelly Benefits.

7. Plaintiff and Class Members have suffered injuries and damages. As a result of Kelly Benefits' wrongful actions and inactions, Plaintiff and Class Members' Private Information has been compromised. Plaintiff and Class Members have had their privacy rights violated and are now exposed to a heightened significant risk of identity theft and credit fraud for the remainder of their lifetimes. Plaintiff and Class Members must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts and the purchase of credit monitoring services, to protect himself from future loss. Plaintiff and Class Members have also lost the value of their Private Information.

8. As a result of Kelly Benefits' wrongful actions and inactions, sensitive information was stolen. Plaintiff and Class Members who have had their Private Information compromised have had their privacy rights violated, have been exposed to the risk of fraud and identify theft,

and have otherwise suffered damages. Plaintiff and Class Members bring this action to secure redress against LSC.

## THE PARTIES

9. Plaintiff is a resident of Mint Hill, North Carolina and, at all times relevant to this action, had his Private Information collected, stored, and maintained by Kelly Benefits. On or around April 21, 2025, Plaintiff received a data breach notice from Kelly Benefits informing Plaintiff that Plaintiff's Private Information had been implicated in Kelly Benefits' Data Breach. As a result of the Data Breach, Plaintiff has been required to expend substantial amounts of time to monitor their personal and medical accounts for attempted fraud.

10. Kelly Benefits is a Maryland corporation headquartered at 1 Kelly Way, Sparks, Maryland 21152. Its agent for service of process is Steven I. Batoff, who can be served at 909 Saint Paul Street, Baltimore, MD 21202.

11. The true names and/or capacities, whether individual, corporate, partnership, associate or otherwise, of the Defendant herein designated as Does 1 to 10 are unknown to or presently being investigated by Plaintiff at this time, and Plaintiff, therefore, sues said Defendants by fictitious names. Plaintiff alleges that each named Defendant herein designated as a Doe party is negligently, willfully, or otherwise legally responsible for the events and happenings herein referred to and proximately caused damages to Plaintiff, as herein alleged. Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when they have been ascertained and will further seek leave to join said Defendants in these proceedings.

12. Plaintiff alleges that, at all times mentioned herein, these Doe parties were agents, servants, employees, partners, distributors, joint ventures, Business Associates under HIPAA of each other, and/or otherwise entrusted Defendants with Plaintiff's and Class Members' Private Information and that, in doing the acts herein alleged, were acting within the course and scope of said agency, employment, partnership joint venture or Business Associate relationship. Each and every aforesaid Defendant was acting as a principal and was negligent or grossly negligent in the selection, hiring and training of each and every other Defendant, ratified the conduct of every other

Defendant as an agent, servant, employee, joint venture, or Business Associate, or otherwise negligently entrusted Plaintiff's and Class Members' Private Information to one another.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). As of the original filing of this Complaint, there exist members of the putative class that are domiciled across the United States. This evidenced by the fact that Defendant's Data Breach has impacted at least 7,029 Maine residents[1], among others. Further, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million.

14. The Court also has personal jurisdiction over the parties because Kelly Benefits is incorporated in Maryland, routinely conducts business in Maryland, and has sufficient minimum contacts in Maryland to have intentionally availed itself to this jurisdiction.

15. Venue is proper in this District because, among other things: (a) Maryland is incorporated in, headquartered in, and directed its activities at residents of this District; and (b) many of the acts and omissions that give rise to this Action took place in this judicial District for services provided in this District.

## FACTUAL ALLEGATIONS

### A. The Data Breach and Kelly Benefits' Failure to Provide Reasonable, Adequate, and Compliant Data Security

16. On or around April 21, 2025, Kelly Benefits informed its customers that it "recently learned" that an unauthorized third-party hacker obtained access to its internal data network and subsequently accessed and removed certain files containing the Private Information between December 12, 2024 and December 17, 2024.

17. The information that was impacted in this Data Breach included, *inter alia*, names, Social Security numbers, and insurance group ID numbers.

---

[1] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/31cc467f-60ce-43da-985b-1157966dc553.html

18. The Data Breach was the result of Kelly Benefits' failure to implement reasonable data security safeguards to protect the sensitive Private Information it collected, aggregated and stored in the ordinary course of its business. Kelly Benefits knew or should have known that said data was valuable and at high risk of targeting from exactly the type of third-party hackers that infiltrated its servers and viewed, accessed and acquired it. Had Kelly Benefits implemented reasonable, adequate and compliant data security as required under statute and regulation, the Data Breach would not have occurred.

**B. Kelly Benefits Was Obligated to Protect Private Information**

19. In collecting and maintaining Private Information, Kelly Benefits agreed it would safeguard the data in accordance with state law and federal law. Kelly Benefits understood the sensitive nature of Private Information and the importance of adequate data security. Indeed, Kelly Benefits represented in its privacy policy[2] that:

> Your privacy, and the privacy of the information provided, is important to us. We use reasonable care to protect your data from loss, misuse, unauthorized access, disclosure, alteration and untimely destruction. We grant access to personal information about you only to our employees, agents, affiliates service providers so they can provide you with the necessary online services and support.
>
> Please be assured that the Site is equipped with security measures to protect the information you provide us.
>
> The personal identifiable information that you provide to us via the Site will not be shared or transferred to unrelated third parties without your prior consent, unless it is required by law or judicial order, or directly related to the services requested.
>
> Protecting the privacy of our clients and users of our Site is important.[3]

20. On information and belief, Kelly Benefits has not implemented reasonable cybersecurity safeguards or policies to protect the Private Information, or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Kelly Benefits

---

[2] *Privacy Policy*, KELLY BENEFITS, https://kellybenefits.com/privacy-policy/ (last visited April 25, 2025).
[3] *Id.*

left significant vulnerabilities in its systems for unauthorized third parties to exploit and gain access to Private Information in its possession, custody or control.

21. Further, as a HIPAA covered entity, Kelly Benefits holds a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' Private Information.

22. Under the HIPAA Privacy Rule, Kelly Benefits is required to:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives maintains or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by their workforce.

45 C.F.R. § 164. 306(a).

23. The HIPAA Privacy Rule also requires Kelly Benefits to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e) and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights" under 45 C.F.R. § 164.312(a)(1).

24. Additionally, 45 C.F.R. §§ 164.404 requires covered entities such as Kelly Benefits to notify individuals whose PHI "is reasonably believed to have been accessed, acquired, used or disclosed as a result" of a data breach within 60 days of the breach being discovered. According to its own notice, Kelly Benefits discovered the Data Breach "recently" but provides no specifics as to when it learned of the suspicious activity. Instead of notifying the hundreds of thousands of

affected, Kelly Benefits delayed notifying affected individuals such as Plaintiff. Thus, Kelly Benefits also violated the HIPAA notification rule.

25. Further, the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits Kelly Benefits from engaging in "unfair or deceptive acts or practices affecting commerce." The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for the consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act. *See, e.g., FTC v. Wyndham Worldwide Corp.* 799 F.3d 236, 243 (3rd Cir. 2015).

26. In addition, Kelly Benefits was required to comply with the consumer privacy protection statutes in other state jurisdictions that it operated within.

27. Kelly Benefits failed to comply with each of these state and federal statutes by failing to implement and maintain reasonable security procedures to protect Plaintiff and Class Members' Private Information.

**C. Applicable Standards of Care**

28. In addition to their obligations under state and federal law, Kelly Benefits owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Kelly Benefits owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer system and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and Class Members.

29. Kelly Benefits owed a duty to Plaintiff and the Class Members to design, maintain, and test their computer system to ensure that the Private Information in Defendants' possession was adequately secured and protected.

30. Kelly Benefits owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in

its possession, including adequately training its employees and others who accessed the Private Information in its possession, including adequately training tits employees and others who accessed PII and PHI in its computer systems on how to adequately protect Private Information.

31. Kelly Benefits owed a duty of care to Plaintiff and Class Members to implement processes that would detect a breach of their data security systems in a timely manner.

32. Kelly Benefits owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

33. Kelly Benefits owed a duty to Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to provide or entrust their Private Information to Kelly Benefits.

34. Kelly Benefits owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when the data breach occurred.

35. Kelly Benefits owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. Kelly Benefits received Private Information from Plaintiff and Class Members with the understanding that Plaintiff and Class Members expected their Private Information to be protected from disclosure. Defendants knew that a breach of their data systems would cause Plaintiff and Class Members to incur damages.

**D. Stolen Information is Valuable to Hackers and Thieves**

36. It is well known, and the subject of many media reports, that Private Information is highly coveted and a frequent target of hackers. Especially in the technology industry, the issue of data security and threats thereto is well known. Despite well-publicized litigation and frequent public announcements of data breaches, Defendants opted to maintain insufficient and inadequate systems to protect the Private Information of Plaintiff and Class Members.

37. Plaintiff and Class Members value their Private Information, as in today's electronic-centric world, Private Information is required for numerous activities, such as new registrations to websites, or opening a new bank account, as well as signing up for special deals.

38. Legitimate organizations and criminal underground alike recognize the value of Private Information. That is why they aggressively seek and pay for it.

39. Private Information is highly valuable to hackers. Identity thieves use stolen Private Information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. Private Information that is stolen from the point of sale are known as "dumps."[4]

40. Once someone buys Private Information, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

41. In addition to Private Information, a hacked email account can be very valuable to cyber criminals. Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[5]

---

[4] *See All About Fraud: How Crooks Get the CVV*, Krebs on Security (April 26, 2016), https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/

[5] *Identity Theft and the Value of Your Personal Data*, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data.

42. As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[6]




43. Hacked information can also enable thieves to obtain other personal information through “phishing.” According to the Report on Phishing available on the United States, Department of Justice’s website: “AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers.”[7]

**E. The Data Breach Has and Will Result in Identity Theft and Identity Fraud**

44. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the Private Information of Plaintiff and the Class Members. The ramification of Defendants’ failure to keep Plaintiff and the Class Members’ data secure is severe.

---

[6] Brian Krebs, *The Value of a Hacked Email Account*, Krebs on Security (June 13, 2013), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/.

[7] *Report on Phishing* (Oct. 2006), https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf

45. Between 2005 and 2019, at least 249 million individuals were affected by health care data breaches.[8] In 2019 alone, over 505 data HIPAA data breaches were reported, resulting in over 41 million healthcare records being exposed, stolen, or unlawfully disclosed.[9] The frequency and severity of healthcare data breaches has only increased with time. 2021 was reported as the "worst ever year" for healthcare data breaches—with at least 44,993,618 healthcare records having been exposed or stolen across 585 breaches.[10]

46. It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics (BJS) found that "among victims who had personal information used for fraudulent purposes, about a third (32%) spent a month or more resolving problems."[11] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*.

**F. Annual Monetary Losses from Identity Theft are in the Billions of Dollars**

47. Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information

---

[8] *Healthcare Data Breaches: Insights and Implications*, National Library of Medicine (May 13, 2020), https://www.ncbi.nlm.nih.gov/ pmc/articles/PMC7349636/.

[9] *December 2019 Healthcare Data Breach*, HIPAA Journal (Jan 21, 2020), https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/

[10] "Largest Healthcare Data Breaches of 2021," HIPPA Journal (Dec. 30, 2021), https://www.hipaajournal.com/largest-healthcare-data-breaches-of-2021/

[11] *See Victims of Identity Theft*, U.S. Department of Justice (September 2015, revised November 13, 2017), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf

> may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[12]

48. This is particularly the case with HIPAA data breaches such as Defendants', as the information implicated, such as social security numbers of medical history, cannot be changed. Once such information is breached, malicious actors can continue misusing the stolen information for years to come. Indeed, medical identity theft are one of the most common, most expensive, and most difficult-to-prevent forms of identity theft.[13] Victims of medical identity theft "often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[14]

49. Indeed, a study by Experian found that the average total cost of medical identity theft is "nearly $13,500" per incident, and that many victims were forced to pay out-of-pocket costs for fraudulent medical care.[15] Victims of healthcare data breaches often find herself "being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores."[16]

50. Plaintiff and the Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any financial or identity fraud they suffer.

---

[12] *See* GAO, Report to Congressional Requesters (June 2007), http://www.gao.gov/new.items/d07737.pdf.

[13] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare* (Feb. 7, 2014), https://khn.org/news/rise-of-indentity-theft/.

[14] *Id.*

[15] *Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[16] *Id.*

**G. Plaintiff and Class Members Suffered Damages**

51. The exposure of Plaintiff and Class Members' Private Information to unauthorized third-party was a direct and proximate result of Defendant's failure to properly safeguard and protect Plaintiff and Class Members' Private Information from unauthorized access, use, and disclosure, as required by and state and federal law. Upon information and belief, the data breach was also a result of Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff and Class Members' Private Information to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and federal statute and regulation.

52. Plaintiff and Class Members' Private Information is private and sensitive in nature and was inadequately protected by Defendants. Defendants did not obtain Plaintiff and Class Members' consent to disclose their Private Information, except to certain persons not relevant to this action, as required by applicable law and industry standards.

53. As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, paying for credit and identity monitoring services, spending time on credit and identity monitoring, placing "freezes" and "alerts" with credit reporting agencies, contacting their personal, financial and healthcare institutions, closing or modifying personal, financial or healthcare accounts, and closely reviewing and monitoring their credit reports, financial accounts and healthcare accounts for unauthorized activity.

54. Plaintiff and Class Members also lost the value of their Private Information. Private Information is a valuable commodity, as evidenced by numerous companies which purchase Private Information from consumers, such as UBDI, which allows its users to link applications like Spotify, X/Twitter, or Apple Health and opt-in to paid opportunities to earn income, and

Brave, which uses a similar business model, and by market-based pricing data involving the sale of stolen Private Information across multiple different illicit websites.

55. Top10VPN, a secure network provider, has compiled pricing information for stolen PII, including $160.15 for online banking details, $35.00 for credit reports, and $62.61 for passports. Standalone Yahoo email accounts have been listed for as little as $0.41, while banking logins are in the range of $500, and verified PayPal accounts with high balances are listed at as much as $2,000.

56. In addition, Privacy Affairs, a cyber security research firm, has listed the following prices for stolen PII:

| | |
|---|---|
| U.S. driving license, high quality: | $550 |
| Auto insurance card: | $70 |
| AAA emergency road service membership card: | $70 |
| Wells Fargo bank statement: | $25 |
| Wells Fargo bank statement with transactions: | $80 |
| Rutgers State University student ID: | $70 |

57. Finally, Plaintiff and Class Members have lost the benefit of their bargains. Plaintiff and Class Members entered into agreements with Defendants under the reasonable but mistaken belief that they would reasonably and adequately protect their Private Information and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received.

58. Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. The improper disclosure and theft of their Private Information;

b. The imminent and impending injury flowing from potential fraud and identity theft posed by their Private Information being exposed to and misused by unauthorized third-party;

c. The untimely and inadequate notification of the Data Breach;

d. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach; and

e. Ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market.

f. Ascertainable losses in the form of the lost benefit of Plaintiff and Class Members' bargains with Defendants.

**CLASS ACTION ALLEGATIONS**

59. Plaintiff brings this action on Plaintiff's own behalf and pursuant to the Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4). Plaintiff intends to seek certification of a Class initially defined as follows:

> All persons residing in the United States of America who received a data breach notice informing them that their Private Information had been breached as a result of the data breach announced by Kelly & Associates Insurance Group, Inc. dba Kelly Benefits on or around April 21, 2025.

60. Excluded from each of the above Class is Kelly Benefits, including any entity in which Kelly Benefits has a controlling interest, is a parent or subsidiary, or which is controlled by Kelly Benefits, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Kelly Benefits. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

61. *Numerosity*, Fed. R. Civ. P. 23(a)(1): There exist at least 263,893[17] Class Members. Accordingly, Class Members are so numerous that the joinder of all members is impractical. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Kelly Benefits' possession, custody, or control, such as reservation receipts and confirmations.

62. *Commonality*, Fed. R. Civ. P. 23(a)(2) and (b)(3): There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Kelly Benefits took reasonable steps and measures to safeguard Plaintiff's and Class Members' Private Information;

b. Whether Kelly Benefits violated common and statutory by failing to implement reasonable security procedures and practices;

c. Which security procedures and which data-breach notification procedure should Kelly Benefits be required to implement as part of any injunctive relief ordered by the Court;

d. Whether Kelly Benefits knew or should have known of the security breach prior to the disclosure;

e. Whether Kelly Benefits has complied with any implied contractual obligation to use reasonable security measures;

f. Whether Kelly Benefits acts and omissions described herein give rise to a claim of negligence;

g. Whether Kelly Benefits knew or should have known of the security breach prior to its disclosure;

[17] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/31cc467f-60ce-43da-985b-1157966dc553.html

h. Whether Kelly Benefits had a duty to promptly notify Plaintiff and Class Members that their PII was, or potentially could be, compromised;

i. What security measures, if any, must be implemented by Kelly Benefits to comply with its duties under state and federal law;

j. The nature of the relief, including equitable relief, to which Plaintiff and the Class Members are entitled; and

k. Whether Plaintiff and the Class Members are entitled to damages, civil penalties, and/or injunctive relief.

63. *Typicality*. Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information breached by Kelly Benefits who received a data breach notice by Kelly Benefits.

64. *Adequacy of Representation*, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Class will be fairly and adequately represented by Plaintiff and Plaintiff's counsel.

65. *Superiority of Class Action*, Fed. R. Civ. P. 23(b)(3): A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

66. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Kelly Benefits' violations of law inflicting substantial damages in the aggregate would go un-remedied.

67. Class certification is also appropriate under Federal Rule of Civil Procedure 23(a) and (b)(2), because Kelly Benefits has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligence

68. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 67, inclusive, of this Complaint as if set forth fully herein.

69. In 2016, the Federal Trade Commission (FTC) updated its publication, "Protecting Personal Information: A Guide for Business," which establishes guidelines for fundamental data security principles and practices for business.[18] Among other things, the guidelines dictate businesses should protect any personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses implement an intrusion detection system to expose breaches as soon as they occur; monitor all incoming traffic for activity indicating someone is attempting to infiltrate or hack the system; monitor instances when large amounts of data are transmitted to or from the system; and have a response plan ready in the event of a breach.[19] Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious

---

[18] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

[19] *Id*.

activity on the network; and verify that third-party service providers have implemented reasonable security measures.[20]

70. Defendants owed Plaintiff and the Class Members a duty of care in the handling of Private Information in its possession from patients and employees. This duty included, but was not limited to, keeping that Private Information secure and preventing disclosure of Private Information to any unauthorized third parties. This duty of care existed independently of Defendants' contractual duties to Plaintiff and the Class Members. Under the FTC Guidelines, and other sources of industry-wide cybersecurity standards, Defendants are obligated to incorporate adequate measures to safeguard and protect Private Information that is entrusted to them in their ordinary course of business and transactions with customers.

71. Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Private Information. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the businesses' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act. Orders from these actions further clarify the measures businesses are required to undertake in order to satisfy their data security obligations.[21]

72. Additional industry guidelines which provide a standard of care can be found in the National Institute of Standards and Technology's (NIST) *Framework for Improving Critical Infrastructure Cybersecurity* (Apr. 16, 2018).[22] Among other guideposts, NIST's framework identifies seven steps for establishing or improving a cybersecurity program (section 3.2):

---

[20] Federal Trade Commission, *Start With Security: A Guide for Business* (Jun. 2015) https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[21] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-securityenforcement.

[22] https://nvlpubs.nist.gov/nistpubs/CSWP/NIST.CSWP.04162018.pdf

*Step 1: Prioritize and Scope*. The organization identifies its business/mission objectives and high-level organizational priorities. With this information, the organization makes strategic decisions regarding cybersecurity implementations and determines the scope of systems and assets that support the selected business line or process. The Framework can be adapted to support the different business lines or processes within an organization, which may have different business needs and associated risk tolerance. Risk tolerances may be reflected in a target Implementation Tier.

*Step 2: Orient*. Once the scope of the cybersecurity program has been determined for the business line or process, the organization identifies related systems and assets, regulatory requirements, and overall risk approach. The organization then consults sources to identify threats and vulnerabilities applicable to those systems and assets.

*Step 3: Create a Current Profile*. The organization develops a Current Profile by indicating which Category and Subcategory outcomes from the Framework Core are currently being achieved. If an outcome is partially achieved, noting this fact will help support subsequent steps by providing baseline information.

*Step 4: Conduct a Risk Assessment*. This assessment could be guided by the organization's overall risk management process or previous risk assessment activities. The organization analyzes the operational environment in order to discern the likelihood of a cybersecurity event and the impact that the event could have on the organization. It is important that organizations identify emerging risks and use cyber threat information from internal and external sources to gain a better understanding of the likelihood and impact of cybersecurity events.

*Step 5: Create a Target Profile*. The organization creates a Target Profile that focuses on the assessment of the Framework Categories and Subcategories describing the organization's desired cybersecurity outcomes. Organizations also may develop their own additional Categories and Subcategories to account for unique organizational risks. The organization may also consider influences and requirements of external stakeholders such as sector entities, customers, and business partners when creating a Target Profile. The Target Profile should appropriately reflect criteria within the target Implementation Tier.

*Step 6: Determine, Analyze, and Prioritize Gaps*. The organization compares the Current Profile and the Target Profile to determine gaps. Next, it creates a prioritized action plan to address gaps – reflecting mission drivers, costs and benefits, and risks – to achieve

> the outcomes in the Target Profile. The organization then determines resources, including funding and workforce, necessary to address the gaps. Using Profiles in this manner encourages the organization to make informed decisions about cybersecurity activities, supports risk management, and enables the organization to perform cost-effective, targeted improvements.
>
> *Step 7: Implement Action Plan*. The organization determines which actions to take to address the gaps, if any, identified in the previous step and then adjusts its current cybersecurity practices in order to achieve the Target Profile. For further guidance, the Framework identifies example Informative References regarding the Categories and Subcategories, but organizations should determine which standards, guidelines, and practices, including those that are sector specific, work best for their needs.

73. In addition to their obligations under federal regulations and industry standards, Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and the Class Members.

74. Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their internal data systems to ensure that the Private Information in Defendants' possession was adequately secured and protected.

75. Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect Private Information in their custodianship, including encrypting the Private Information stored within their systems and adequately training their employees and others who accessed Private Information within their computer systems on how to adequately protect Private Information.

76. Defendants owed a duty to Plaintiff and the Class Members to implement processes or safeguards to detect a breach of their data security systems in a timely manner.

77. Defendants owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

78. Defendants owed a duty to Plaintiff and the Class Members to timely disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material consideration in Plaintiff and Class Members' decisions to entrust their Private Information to Defendants.

79. Defendants owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when data breaches occur.

80. Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices and systems. Defendants collected Private Information from Plaintiff and the Class Members. Defendants knew that a breach of their data systems would cause Plaintiff and the Class Members to incur damages.

81. Defendants breached their duties of care to safeguard and protect Private Information which Plaintiff and the Class Members entrusted to them. Defendants adopted inadequate safeguards to protect Private Information and failed to adopt industry-wide standards set forth above in their supposed protection of Private Information. Defendants failed to design, maintain, and test their computer system to ensure that the Private Information was adequately secured and protected, failed to create and implement reasonable data security practices and procedures, failed to implement processes that would detect a breach of their data security systems in a timely manner, failed to disclose the breach to potentially affected customers in a timely and comprehensive manner, and otherwise breached each of the above duties of care by implementing careless security procedures which led directly to the breach.

82. Defendants breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendants failed to implement proper data security

procedures to adequately and reasonably protect Plaintiff and Class Member's Private Information. In violation of the FTC guidelines, *inter alia*, Defendants did not protect the personal customer information that it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their network's vulnerabilities; and failed to implement policies to correct security problems. In violation of the NIST's Framework, Defendants, *inter alia*, failed to adopt sufficient resources to identity and address security gaps.

83. Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

84. As a direct and proximate result of Defendants' failure to adequately protect and safeguard Private Information, Plaintiff and the Class Members suffered damages. Plaintiff and the Class Members were damaged because their Private Information was accessed by third parties, resulting in increased risk of identity theft, property theft and extortion for which Plaintiff and the Class Members were forced to adopt preventive and remedial efforts. These damages were magnified by the passage of time because Defendants failed to notify Plaintiff and Class Members of the Data Breach until weeks had passed. In addition, Plaintiff and Class Members were also damaged in that they must now spend copious amounts of time combing through their records to ensure that they do not become the victims of fraud and/or identity theft.

85. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

### Breach of Implied Contract

86. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 85, inclusive, of this Complaint as if set forth fully herein.

87. Plaintiff and Class Members entered into agreements for services with Defendants. In making those agreements, Defendants solicited and invited Plaintiff and Class Members to

provide their Private Information to Defendants as requirement of receiving those services. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to enter the agreements. Inherent within those agreements was an implied contractual obligation that Defendants implement reasonable and adequate data security to safeguard and protect the Private Information entrusted to them by Plaintiff and Class Members from unauthorized disclosure.

88. Thus, when Plaintiff and Class Members provided their Private Information to Defendants in exchange for Defendants' services, they entered into implied contracts with Defendants under which Defendants agreed to and was obligated to reasonably protect their Private Information. Plaintiff and Class Members provided payment to Defendants, as well as their Private Information, under the reasonable but mistaken belief that any money they paid to Defendants in connection to its provision of its services would be used in part to provide reasonable and adequate data security for their Private Information.

89. Defendants did not provide reasonable and adequate data security for Plaintiff and Class Members' Private Information and instead caused it to be disclosed to an unauthorized third-party. Defendants did not comply with state and federal statutes and regulations and did not comply with industry data security standards. In doing so, Defendants materially breached their obligations under implied contract.

90. That Defendants would implement such reasonable and adequate data security was a material prerequisite to the agreements between Plaintiff and Class Members. Reasonable consumers value the privacy of their Private Information, and do not enter into agreements for services which are known not to protect customer data. Accordingly, Plaintiff and Class Members would not have entered into agreements with Defendants and would not have provided them with their sensitive Private Information, had they known that Defendants would not implement such reasonable and adequate data security.

91. As a result of Defendants' breach, Plaintiff and Class Members have lost the benefit of their bargains. Plaintiff and Class members entered into agreements with Defendants under the

reasonable but mistaken belief that it would reasonably and adequately protect their Private Information and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received.

92. Plaintiff and Class Members fully performed their obligations under the implied contract by providing their Private Information and making payments to Defendants.

93. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**THIRD CAUSE OF ACTION**

**Unjust Enrichment/Quasi-Contract**

94. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 93, inclusive, of this Complaint as if set forth fully herein.

95. Plaintiff and Class Members provided their Private Information and conferred a monetary benefit upon Defendants in exchange for services. Plaintiff and Class Members did so under the reasonable but mistaken belief that part of their monetary payment to Defendants would cover the implementation of reasonable, adequate, and statutorily mandated safeguards to protect their Private Information. Defendants were enriched when they sold their medical testing services at a higher price than it otherwise would have based on those reasonable but mistaken beliefs.

96. Defendants' enrichment came at the expense of Plaintiff and Class Members, who would not have paid for Defendants' services, or would have only been willing to paid substantially less for them, had they been aware that Defendants had not implement reasonable, adequate and statutorily mandated safeguards to protect their Private Information.

97. As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff and Class Members suffered have suffered damages in the form of their lost benefit of the

bargains. Plaintiff and Class Members entered into agreements with Defendants under the reasonable but mistaken belief that it would reasonably and adequately protect their Private Information and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received.

98. Defendants should not be permitted to retain Plaintiff's and Class Members' lost benefits, without having adequately implemented the data privacy and security procedures for itself that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws. and industry standards. Defendants should not be allowed to benefit at the expense of consumers who trust Defendants to protect the Private Information that they are required to provide to Defendants to receive Defendants' services.

99. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## **FOURTH CAUSE OF ACTION**

### **Breach of Fiduciary Duty**

100. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 99, inclusive, of this Complaint as if set forth fully herein.

101. Plaintiff and Class Members provided their Private Information to Defendants in confidence and under the reasonable belief that Defendants would protect the confidentiality of that information. Plaintiff and Class Members would not have provided Defendants with their Private Information had they known that Defendants would not take reasonable and adequate steps to protect it.

102. Defendants' acceptance and storage of Plaintiff's and Class Members' Private Information created a fiduciary relationship between Defendants and Plaintiffs and Class

Members. As a fiduciary of Plaintiffs and Class Members, Defendants had a duty to act primarily for the benefit of their patients and employees, which includes implementing reasonable, adequate, and statutorily complaint safeguards to protect Plaintiff's and Class Members' Private Information.

103. Far apart from a normal commercial relationship, Plaintiff and Class Members put special trust and confidence in their relationship with Defendants, a medical provider. Defendants, medical providers or associated entities/persons, occupy a position of trust and confidence as regards their patients such that a special fiduciary relationship exists between Plaintiff and Class Members and Defendants. Akin to a doctor-patient relationship, Plaintiff and Class Members held Defendants is such high regard as to trust Defendants' assurances and promises as to the confidentiality, sensitivity, and security of their Private Information.

104. Defendants breached their fiduciary duties to Plaintiff and Class Members by, *inter alia,* failing to implement reasonable and adequate data security protections, failing to comply with the data security guidelines set forth by the FTC, NIST and HIPAA, failing to implement reasonable and adequate data security training for their employees, and otherwise failing to reasonably and adequately safeguard the Private Information of Plaintiff and Class Members.

105. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered damages. Plaintiff and Class Members were damaged because their Private Information was accessed by third parties, resulting in increased risk of identity theft, property theft and extortion for which Plaintiff and Class Members were forced to adopt preventive and remedial efforts. These damages were magnified by the passage of time because Defendants failed to notify Plaintiffs and Class Members of the Data Breach until nearly six months after the Data Breach had been discovered.

106. In addition, Plaintiff and Class Members were also damaged in that they must now spend copious amounts of time combing through their records to ensure that they do not become the victims of fraud and/or identity theft. Importantly, Plaintiff and Class Members suffered damages in the form of their lost benefit of the bargains. Plaintiff and Class Members entered into agreements with Defendants under the belief that they would reasonably and adequately protect

their Private Information. Plaintiff and Class Members would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received.

107. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all Class Members, respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

1. For an Order certifying the Class as defined herein and appointing Plaintiff and Plaintiff's counsel to represent the Class;

2. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

3. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of Private Information compromised.

4. For an award of actual damages, statutory damages, and compensatory damages, in an amount to be determined at trial;

5. For an award of punitive and treble damages, in an amount to be determined at trial;

6. For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

7. For such other and further relief as this Court may deem just and proper.

Dated: April 30, 2025

Respectfully submitted,



Seth Ba[illegible] . 0512130054
**BAYL[illegible]OUP PLLC**
10175 West Twain Avenue, Suite 130
Las Vegas, NV 89147
Telephone: (202) 679-9997
Email: *seth@bayleslawgroup.net*

Jesenia A. Martinez*
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
Email: *jesenia.martinez@wilshirelawfirm.com*
*JeseniaMartinezsTeam@wilshirelawfirm.com*

**pro hac vice* forthcoming

*Attorneys for Plaintiff and all others similarly situated*

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: April 30, 2025

Respectfully submitted,

Seth Bayles, Bar No. 0512130054
**BAYLES LAW GROUP PLLC**
10175 West Twain Avenue, Suite 130
Las Vegas, NV 89147
Telephone: (202) 679-9997
Email: *seth@bayleslawgroup.net*

Jesenia A. Martinez*
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
Email: *jesenia.martinez@wilshirelawfirm.com*
*JeseniaMartinezsTeam@wilshirelawfirm.com*

**pro hac vice* forthcoming

*Attorneys for Plaintiff and all others similarly situated*